IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
*Plaintiff*,

vs.

**EZQUIEL RODRÍGUEZ-POLANCO,**
*Defendant.*

**CRIMINAL NO.:** 25-070 (FAB)

**SENTENCING MEMORANDUM**

TO THE HONORABLE FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF PUERTO RICO

Ezequiel Rodríguez-Polanco (Mr. Rodríguez), a 55-year-old Dominican national with several health conditions, respectfully requests the Court sentence him to the time he has served. In support of his request, Mr. Rodríguez submits this sentencing memorandum to provide the Court with enough information to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553(a).

It was January 31st, 2025, when Mr. Rodríguez arrived at the Luis Muñoz Rivera airport to self deport. Mr. Rodriguez had no desire to remain in Puerto Rico and following the new President's directives, recommending self-deportation for illegal immigrants remaining in the United States, he wanted to do the right thing and return home.

President Donald Trump's administration has been recommending self-deportation for illegal immigrants remaining in the United States. President Trump has promised to enforce strict measures and harsh penalties on people who do not opt for a voluntary departure. These include being found through raids and arrests, involuntary

1

deportation, and never being admitted again to the United States.[1] The Department of Homeland Security even considers self-deportation as the safest option for the immigrant community. Another advantage is that "it also saves U.S. taxpayer dollars and valuable Customs and Border Protection (CBP) and Immigration and Customs Enforcement (ICE) resources to focus on dangerous criminal aliens." [2]

*"[I]f you leave now, you may have an opportunity to return and enjoy our freedom and live the American Dream. But understand this: under President Trump's America's borders are closed to lawbreakers. Follow the law, and you'll find an opportunity. Break it, you'll find consequences. The choice is yours".*[3] Those were the words of Kristi Noem, Secretary of the Department of Homeland Security.

But Mr. Rodríguez's attempt at self-deportation turned out to be the beginning of what he describes as the most difficult moments of his life. As he arrived at the airport expecting to head back to the Dominican Republic, he was arrested and charged before this Court for Illegal Reentry of Removed Alien. (8 U.S.C. §1326(a)). Just six days after President Donald Trump's administration began enforcing his strict immigration policies, Mr. Rodríguez was living an immigrant's worst nightmare. His self-deportation did not turn out to be a "safe" option that saved up the Government taxpayer money, as

---

[1] Lee, M., & Fox News. (2025b, April 9). *Thousands leave country voluntarily amid trump self-deport push, DHS says*. Fox News. https://www.foxnews.com/politics/thousands-leave-country-voluntarily-amid-trump-self-deport-push-dhs-says?msockid=18d45ad44dd16e9817b24faf4cc36fcf

[2] *DHS launches CBP home app with self-deport reporting feature: Homeland security*. U.S. Department of Homeland Security. (2025b, March 10). https://www.dhs.gov/news/2025/03/10/dhs-launches-cbp-home-app-self-deport-reporting-feature

[3] *DHS announces ad campaign warning illegal aliens to self-deport and stay out: Homeland security*. U.S. Department of Homeland Security. (2025, February 17). https://www.dhs.gov/news/2025/02/17/dhs-announces-ad-campaign-warning-illegal-aliens-self-deport-and-stay-out

Homeland Security describes it. His decision to voluntary leave to the Dominican Republic, placed Mr. Rodríguez under BOP custody. His liberty taken away.

As many other immigrants, Mr. Rodríguez came to the United States seeking employment and a better life with financial stability. On each occasion he has realized that there is no paradise in Puerto Rico. This time around he became convinced that he belongs in the Dominican Republic, where his family lives. Each time Mr. Rodríguez sought better living conditions in the United States; he was hopeful of finding stable employment, and a higher income. But found neither. As his health worsened, Mr. Rodríguez found himself unable to work, afford medication, housing and sometimes even food and shelter.

Mr. Rodríguez has had an ulcer in his stomach for the past three decades. His symptoms include: (1) internal bleeding, which shows up on his stool; (2) acute pain in his stomach; (3) and a burning sensation in his gastrointestinal organs. When he arrived to Puerto Rico, his symptoms flared up. In Puerto Rico, it was harder for him to get his condition under control because not only is his medication expensive, but it also requires prescription. As someone who cannot acquire health insurance due to his migration status, his options for treatment were and are still limited—especially compared to the Dominican Republic, where he can treat himself with over-the-counter medication.

While incarcerated at MDC, his ulcer symptoms have worsened. He has been in constant pain and is constantly vomiting. Because the BOP has not accommodated him to a special diet, he found himself unable to eat anything but certain fruits. But even then, Mr. Rodríguez could not stop bleeding in his stool. On April 22nd, 2025, Mr. Rodríguez was finally prescribed his ulcer medication. However, the other medication that would manage his blood pressure and sciatic nerve pain had yet to be administered by the BOP.

Whenever his condition flares up, a quick solution to feeling better is to lie down. Since inmates are not given pillows, he uses his shoes to prop his head up and alleviate pain. Mr. Rodríguez has been surviving these past months in excruciating pain and discomfort.

Furthermore, Mr. Rodríguez's sciatic nerve was injured during an operation in 2020. The BOP has been taken to hospital to evaluate his pain but has yet to administer medication to ease it. The doctor that treated him suggested surgery as treatment. In addition, he has been taken to the Cardiovascular Hospital in Centro Médico on several occasions due to acute pain in his chest. Mr. Rodríguez is now suffering from heart complications that make him feel weak, grasping for air, and dizzy.

Mr. Rodríguez has nothing to look for in Puerto Rico, hence why he opted to voluntarily return to the Dominican Republic. He plans to return and seek medical treatment for his ulcer, heart complications and sciatic nerve issues. Mr. Rodríguez has assured that he will not illegally reenter the United States again. Because of his illnesses and his age, Mr. Rodríguez has no energy to come back. His deteriorating physical health prevents him from boarding a vessel, risking his life, once again.

Lastly, Mr. Rodriguez had never been imprisoned before. As someone facing criminal justice system for the first time, he has no desire to ever be arrested again. He has stated that he never wants to be subjected to the conditions he is facing as a middle-aged, ill inmate. Mr. Rodríguez needs to return home and treat his health conditions.

Mr. Rodríguez is a first true offender. Since he has no criminal history, he is exposed to 0-6 months according to the Guidelines' sentencing table. Mr. Rodríguez will have served five and a half months in custody as of his sentencing date on July 21st, 2025. Not sentencing Mr. Rodríguez to time served will put him at risk of being overserved.

A sentence of time served is still a significant punishment and restriction of Mr. Rodríguez's liberty. As a person with no legal status in the United States, Mr. Rodríguez will also be subjected to additional detention pending deportation.

For these reasons, and considering the factors found at 18 U.S.C. § 3553(a), including this history and features of Mr. Rodríguez, the nature and circumstances of the offense, the need to provide just punishment and the prospects of rehabilitation, Ezequiel Rodríguez-Polanco requests that this Honorable Court considers a sentence of time served, to be sufficient, but not greater than necessary to meet the goals of deterrence and public safety.

**WHEREFORE**, Mr. Rodríguez respectfully requests that the Court notice this Sentencing Memorandum, and sentence him to time served.[4]

**I CERTIFY** that on this date I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system which will send notification of this filing to the parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico on this 14th day of July 2025.

**RACHEL BRILL**
**Federal Public Defender**
**District of Puerto Rico**

***S/ Stephanie Torres-Pérez***
Stephanie Torres-Pérez
Assistant Federal Public Defender
USDC-PR 308710
241 F.D. Roosevelt Ave.
San Juan, P.R. 00918-2441
T: (787)-281-4922
F: (787)-281-4899

---

[4] The undersigned gratefully acknowledges the assistance of Sofia Delgado-Diaz, legal intern at the Federal Public Defender's Office for the District of Puerto Rico, in the preparation of this Sentencing Memorandum.

5